**In re AMERICAN INTERNATIONAL AIRWAYS, INC., Debtor.**

**Bankruptcy No. 84–02379K.**

United States Bankruptcy Court, E.D. Pennsylvania.

Feb. 20, 1987.

David Fishbone, Philadelphia, Pa., for trustee.

Harry P. Begier, Jr., Philadelphia, Pa., Trustee.

Eugene J. Wien, I.R.S., Philadelphia, Pa., Stuart J. Glick, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

James M. Peck, Marshall A. Fleisher, Philadelphia, Pa., for objectors.

Pace Reich, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The matter before the Court raises the issue of whether funds segregated by the Debtor in trust for federal taxes, pursuant to federal statute, are property of the Debtor's estate and, as such, are available for distribution to all creditors, as opposed to being payable, in their entirety, to the federal government on account of the taxes due. While we share, with the creditors objecting to the distribution to the federal government, an aversion to giving particular creditors any sort of preference in a bankruptcy distribution, we are constrained to hold that, here, a combination of a specific legislative intent to render such federal tax trusts separate and apart from the property of the Debtor's estate and the strict performance by the Debtor and the Trustee of their duties as trustee of the funds requires a finding in favor of the federal government.

The bankruptcy case in which this dispute arises was filed by the above-captioned Debtor pursuant to Chapter 11 of Title 11, U.S.Code, on July 19, 1984. Harry P. Begier, Esquire, was appointed as Trustee of the Debtor on September 9, 1984.

On May 13, 1985, the Trustee filed the instant Motion for Leave to Pay to the Internal Revenue Service Trust Account Funds, accumulated in Account Nos. 802–304–2 and 802–341–7 in Industrial Valley Bank and Trust Co., then in the total amount of $432,504.28. On June 10, 1985, three (3) creditors of the Debtor, American Financial Corp., Great American Life Insurance Co., and Great American Management Services, Inc. (hereinafter referred to collectively as "AFC"), filed an Objection to this distribution, claiming that these Trust Account Funds were property of the Debtor's estate and should be distributed accordingly.

This matter first came to our attention on December 3, 1986, when the Motion was listed for disposition. We are unable to state why this matter failed to surface in the previous year and a half that it had been outstanding. In any event, after a brief colloquy with counsel, a schedule for disposition of this matter was devised and set forth in an Order of December 4, 1986. AFC and counsel representing the Tax Division of the United States Department of Justice, on behalf of the Internal Revenue Service (referred to hereinafter as "IRS"), agreed to prepare a Stipulation of Facts and then submit the matter on briefs.

Accordingly, a Stipulation of Facts, consisting of but two (2) pages and six (6) paragraphs, was executed by counsel for AFC, IRS, and the Trustee and filed on December 18, 1986. AFC and IRS filed their respective Briefs on or about December 29, 1986, and January 9, 1987, respectively. However, we were unable to acquire a copy of IRS' Brief until January 20, 1987.

Since the parties agree to the facts, no Findings of Fact are required, and our Opinion is drafted in narrative form rather than that otherwise required per Bankruptcy Rules 9014 and 7052 and Federal Rule of Civil Procedure 52(a).

The Stipulation provides, in pertinent part, that, on February 8, 1984, IRS served notice upon the Debtor "to establish separate bank accounts and deposit in such accounts and hold in trust for the United States unpaid federal excise and withholding taxes" pursuant to 26 U.S.C. § 7512(b).[1] The Debtor and, after his appointment, the Trustee, followed the IRS's directive, and did in fact make the deposits

---

**1.** (b) Requirements.—Any person who is required to collect, account for, and pay over any tax imposed by subtitle C, by chapter 33, or by section 4986, if notice has been delivered to such person in accordance with subsection (a), shall collect the taxes imposed by subtitle C, chapter 33, or section 4986 which become collectible after delivery of such notice, shall (not later than the end of the second banking day after any amount of such taxes is collected) deposit such amount in a separate account in a bank (as defined in section 581), and shall keep the amount of such taxes in such account until payment over to the United States. *Any such account shall be designated as a special fund in trust for the United States, payable to the United States by such person as trustee.* (emphasis added).

in the manner required by 26 U.S.C. § 7512(b), resulting in the accumulation of a sum in excess of $450,000.00 in the accounts at present.

The major arguments of AFC are that the sustenance of the position of IRS "would be to overturn the set of priorities which Congress intended to control in the special circumstances of a bankruptcy" and further "would, in effect, give priority to a 'secret lien' in favor of the IRS." Cited as authority in support of its position by AFC were *United States v. Randall*, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971); *In re Shakesteers Coffee Shops*, 546 F.2d 821 (9th Cir.1976), *cert. denied*, 431 U.S. 974, 97 S.Ct. 2939, 53 L.Ed.2d 1071 (1977); *In re Tamasha Town & Country Club*, 483 F.2d 1377 (9th Cir.1973); and *In re Major Dynamics, Inc.*, 59 B.R. 697 (Bankr.S.D.Cal. 1986).

■ Although we are sympathetic with the position of AFC and would be inclined to sustain it if we were drafting the Code, we cannot do so. We agree that priorities allowed to any creditors over any other should be most narrowly construed and disallowed whenever possible. However, the legislative history of the Code, as uniformly construed by all of the post-enactment Code cases, establishes that the position of AFC here cannot be sustained.

*Randall, Shakesteers,* and *Tamasha* are all cases interpreting the Bankruptcy Act, which the Code was enacted to supersede in 1978. In *Randall,* the Supreme Court, by a 5–4 majority, held that, where a Chapter XI debtor-in-possession, though ordered to do so, failed to deposit withheld income and social security taxes in special tax accounts, the funds were not a trust in favor of the federal government, and an IRS claim succumbed to "an overriding statement of federal policy on the question of priorities." 401 U.S. at 515, 91 S.Ct. at 993.

Taking the reasoning of *Randall* one step further, the two (2) Ninth Circuit cases construing the Bankruptcy Act, *Shakesteers* and *Tamasha,* held that, even when the debtor *did* segregate funds for

taxes, as ordered to do, IRS was not entitled to a preference over other creditors.

We believe that it is abundantly clear that Congress intended to overrule *Shakesteers* and *Tamasha* in enacting, as part of the Bankruptcy Code, 11 U.S.C. § 541(d) which, prior to a very minor amendment in 1984, provided as follows:

(d) Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

The compromise bill which was enacted in 1978 as the Bankruptcy Code was accompanied by a joint explanatory statement issued by both the House and the Senate. As we previously pointed out in an Opinion in an adversarial proceeding in this same case, *In re American International Airways, Inc., Begier v. Krain Outdoor Advertising, Inc.*, 68 B.R. 326, 334 at 21 (Bankr.E.D.Pa.1986), this joint explanatory statement from the managers of both houses explains in detail the compromises that were reached and is the most reliable explanation of the reasons for changes in the wording. Further, this statement is similar in function to the Joint Explanatory Statement of Managers that accompanies a formal Conference Report of a Committee of Conference, and its effect should therefore be the same. *Id.* Therefore, this Statement constitutes the most reliable available legislative history.

Relevant to the final version of 11 U.S.C. § 541(d), as it specifically relates to federal tax trust funds, was the following passage from the joint explanatory Statement:

As to withheld taxes, the House Amendment deletes the Rule in the Sen-

ate bill as unnecessary since property of the estate does not include the beneficial interest in property held by the debtor as a trustee. Under the Internal Revenue Code of 1954 (section 7501), the amounts of withheld taxes are held to be a special fund in trust for the United States. Where the Internal Revenue Service can demonstrate that the amount of taxes withheld are still in the possession of the debtor at the commencement of the case, then if a trust is created, those amounts are not property of the estate.... 124 CONG.REC. 32350, 32417 (1978) (Statement of Representative Edwards); 124 CONG.REC. 33989, 34016–34017 (1978) (Statement of Senator DeConcini).

The Supreme Court, in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 n. 10, 103 S.Ct. 2309, 2314 n. 10, 76 L.Ed.2d 515 (1983), indicated that it considered the foregoing statements authoritative and binding upon it. Other cases have appropriately observed that this language at least "modifies" the holding in *Randall*. *See Selby v. Ford Motor Co.*, 590 F.2d 642, 648, n. 18 (6th Cir.1979); *In re First Fidelity Fin. Services, Inc.*, 36 B.R. 508, 513 (Bankr.S.D.Fla.1983); and *In re Nashville White Trucks, Inc.*, 22 B.R. 578, 587 n. 12 (Bankr.M.D.Tenn.1982).

While we are not prepared to hold that enactment of 11 U.S.C. § 541(d) overrules *Randall*, a case in which the debtor failed to segregate the funds which were to be held in trust under statutory provisions of the Internal Revenue Code, we do believe that this Code provision, read in light of the legislative history, overrules the holding in *Shakesteers* and *Tamasha*, where the debtor *did* segregate the funds as directed. The instant case, unfortunately for AFC, presents facts consistent with *Shakesteers* and *Tamasha* rather than *Randall*. We can find no distinction whatsoever between the reference to "a special fund in trust for the United States" in 26 U.S.C. § 7501, to which the joint statements of Senator De-Concini and Representative Edwards make specific reference, and 26 U.S.C. § 7512(b), which contains the same language.

We do note that some courts have proceeded to render decisions on facts which make it clear that they believe that *Randall*, as well as *Shakesteers* and *Tamasha*, have been overruled by 11 U.S.C. § 541(d) of the Code. These cases hold that, even when the debtor has failed to segregate tax trust funds, a preference is accorded to the government. *See In re Fresh Approach, Inc.*, 51 B.R. 412, 418–24 (Bankr.N.D.Tex.1985); *In re Rodriguez*, 50 B.R. 576, 580–81 (Bankr.E.D.N.Y.1985); and *In re Razorback Ready-Mix Concrete Co.*, 45 B.R. 917, 920–22 (Bankr.E.D.Ark. 1984). *See also In re Longhorn Oil & Gas Co.*, 64 B.R. 263 (Bankr.S.D.Tex.1986).

■ We are not prepared to follow these cases, however, because we believe that, to successfully make a claim to specific funds which would otherwise be distributed to all creditors, a creditor is obliged to make a strong showing of not only the creation of a trust, but also the tracing of the specific funds against which a trust is allegedly imposed in the possession of the debtor and/or a trustee. In this way, the imposition of special priorities and secret liens which are anathema to the principle of equal distribution in a bankruptcy proceeding will be kept to a minimum. For this reason, we would be inclined to still follow *Randall* on its facts in interpreting the Code, as did the court in the other authority cited by AFC, *Major Dynamics, supra*. *See also In re Heston Oil Co.*, 63 B.R. 711 (Bankr.N.D.Okla.1986).

■ However, this case presents a situation where the Debtor and the Trustee *have* segregated the funds to be paid for federal taxes, per 26 U.S.C. § 7512(b). Clearly, these are not the facts of *Randall* or *Major Dynamics*. In circumstances such as those presented by the instant case, the Code cases are uniform in holding that the preference created by the trust must be honored. *See In re Frank Mossa Trucking, Inc.*, 65 B.R. 715 (Bankr.D.Mass. 1985); *In re Tap, Inc.*, 52 B.R. 271 (Bankr. D.Mass.1985); and *In re D'Aiuto*, 48 B.R. 451 (Bankr.N.D.N.Y.1985).

We therefore have no choice here but to overrule the Objection of AFC and, in an accompanying Order, direct that the Trustee, per his Motion, pay over to IRS whatever funds are in the accounts established pursuant to 26 U.S.C. § 7512(b). We shall therefore proceed to do so.